ESTATE OF JOHN SCHLOSSER, DECEASED, RAYMOND SCHLOSSER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63904.   Filed April 30, 1959.

*Vernon L. Stover, Esq.*, for the petitioner.
*William C. Baskett, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* We have here only one issue to decide. That issue is whether, where the executor avails himself of the option granted by section 811(j) to value the decedent's gross estate as of 1 year after the decedent's death, the value of 831 shares of Sun Oil received as a stock dividend during the year is to be included in the value of the gross estate.

The facts have been fully stated in our Findings of Fact and it is unnecessary to repeat them here.

Section 811(j), the applicable statute, is printed in the margin.[2]

---

[2] SEC. 811. GROSS ESTATE.

(j) OPTIONAL VALUATION.—If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death and, within one year after the decedent's death, distributed by the executor (or, in the case of property included in the gross estate under subsection (c), (d), or (f) of this section, distributed by the trustee under the instrument of transfer), or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death, and (2) any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. No deduction under this subchapter of any item shall be allowed if allowance for such item is in effect given by the valuation under this subsection. Wherever in any other subsection or section of this chapter, reference is made to the value of property at the time of the decedent's death, such reference shall be deemed to refer to value of such property used in determining the value of the gross estate. * * *

Petitioner, in support of its contention that the value of the stock dividend paid on stock of Sun Oil after the decedent's death and during the optional valuation period is not includible in decedent's gross estate under section 811(j), argues in its brief as follows:

Respondent here overlooks entirely the fact that the value of stocks, within the meaning of the Internal Revenue Code, is the fair market value per share on the applicable valuation date (section 81.10), and that the 10,394 shares included in the inventory or gross estate as of the date of decedent's death are not the same as 11,225 shares (under Federal law, the 10,394 shares are corpus, and the 831 shares are nontaxable income) on hand one year after death. Petitioner could not truthfully have sworn that the decedent owned the 831 shares on January 25, 1953, which the Company chose to distribute to the petitioner on December 15, 1953, at the rate of 8 shares for each 100 shares then held, and capitalized earnings which accrued during the optional period.

Section 81.10 to which petitioner refers in the above quotation from its brief is section 81.10 of Regulations 105 and is printed in the margin.[3]

Petitioner, in support of its contention that the 831 shares of Sun Oil stock which petitioner received as a stock dividend on December 15, 1953, is not includible property on the January 25, 1954, valuation date, relies chiefly on the Supreme Court's decision in *Maass* v. *Higgins*, 312 U.S. 443. We do not think that case is applicable here. That case held that rents, royalties, interest, or dividends which had not accrued at the time of decedent's death but which accrued and were received after his death were not includible for valuation purposes where the executor had elected to value the estate 1 year after decedent's death. The dividends involved in *Maass* v. *Higgins*, *supra*, were cash dividends which had been declared and paid after decedent's death.

In the instant case the facts show that in the year 1953, following decedent's death, Sun Oil paid cash dividends of $7,506,336 out of its earnings for that year. Presumably, petitioner received its part of those cash dividends by reason of its ownership of the 10,394 shares which decedent owned at the time of his death. It is assumed that the reason why no mention is made in the stipulation of facts

---

[3] Sec. 81.10. **Valuation of property.**—(*a*) *General.*—The value of every item of property includible in the gross estate is the fair market value thereof at the time of the decedent's death; or, if the executor elects in accordance with the provisions of section 81.11, it is the fair market value thereof at the date therein prescribed or such value adjusted as therein set forth. * * * Such value is to be determined by ascertaining as a basis the fair market value as of the applicable valuation date of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the applicable valuation date should be considered in every case.

\* \* \* \* \* \* \*

(*c*) *Stocks and bonds.*—The value of stocks and bonds, within the meaning of the Internal Revenue Code, is the fair market value per share or bond on the applicable valuation date.

In the case of stocks and bonds listed on a stock exchange the mean between the highest and lowest quoted selling prices on the valuation date shall be considered as the fair market value per share or bond. * * *

as to the amount of cash dividends which petitioner received on these 10,394 shares in 1953 is because the Commissioner has made no attempt to include them as a part of decedent's estate on the valuation date. Under section 81.11, Regs. 105, promulgated after the Supreme Court's decision in *Maass* v. *Higgins, supra,* these cash dividends clearly would not be includible property as of the date of decedent's death and the Commissioner has made no attempt to include them. He does not argue that they should be included.

In section 18.47 of Paul's Federal Estate and Gift Taxation, vol. 2, the author, under the heading "The Treatment of the Income of Estates where the Optional Valuation Date is Used," discusses the Treasury regulations here applicable. The author, after discussing several situations which may arise under the applicable regulations but which are not pertinent here, then turns his attention to the payment of a stock dividend declared and paid after decedent's death. Of this, he says:

> Another problem to be considered in connection with stock under the optional valuation statute is the effect of a "true" stock dividend, that is, one which does not give a stockholder "an interest different from that which his former stockholdings represented." Under the rule of *Eisner* v. *Macomber,* \* \* \* a dividend of this kind, as, for example, shares of common upon common, is not taxable income. "The new certificates simply increase the number of the shares, with consequent dilution of the value of each share." Logically, it should follow that such dividends, if declared during the interim one-year period, should be taxed together with the underlying shares, if the later valuation date is chosen. The dividends do not constitute income to the estate but represent a readjustment of the stockholder's interest. The aversion to double taxation, displayed by the Court in the *Maass* case, has nothing to feed upon in this situation, at least as long as *Eisner* v. *Macomber* remains good law.

Petitioner argues that the payment of the stock dividend here involved should be treated the same as if it had been a dividend paid in cash because Sun Oil had sufficient earnings in 1953 to have paid the dividend in cash if it had desired to do so, and its action in capitalizing these earnings when the stock dividend was declared and paid makes the situation different from an ordinary stock split and should be treated the same as a cash dividend. We do not agree with this contention.

In *Estate of Delia Crawford McGehee,* 28 T.C. 412, we had before us a case where the decedent in her lifetime had in 1947, 1948, and 1949 transferred a total of 774 shares of stock of the Jacksonville Paper Company in contemplation of death. There was no controversy but that these shares had been transferred in contemplation of death. Later, certain stock dividends were paid on these shares of stock to the transferees prior to decedent's death and the question was whether the value of these stock dividend shares should be included in decedent's gross estate along with the 774 shares which the estate

conceded should be included in the gross estate. The Commissioner had included them in his determination of an estate tax deficiency and we sustained the Commissioner. In sustaining him, we said:

> At the time of transfer each share of stock represented to the decedent a corresponding interest in the corporation proportionate to the whole of the corporate business. Stock dividends on those shares would in no way change the stockholder's interest in the corporation. And it would make no difference whether the stock dividend represented a "capitalization of earnings" or a "stock split." (The petitioner here seeks to draw such a distinction.) *Eisner* v. *Macomber*, 252 U.S. 189. True it is that after the stock dividend each share represented a smaller proportionate interest, but, in toto, they still represented the original interest in the corporation which the decedent owned and had transferred. That interest had simply been further splintered or atomized. In no way had it been increased or diminished and if we look to its value as of the time of death, the value of all the shares represents the value of the interest transferred.

We were reversed by the Fifth Circuit in that case, see *McGehee* v. *Commissioner*, 260 F. 2d 818. Petitioner in its brief strongly relies for its support of its contention here upon the court's opinion in reversing us in the *McGehee* case. The question in the *McGehee* case is not the same as the question we have before us here. Here, we have a specific statute prescribing the general method of valuation which shall be used on the alternate valuation date and a comprehensive Treasury regulation covering methods to be used when the estate has elected to value 1 year subsequent to decedent's death.

Section 81.11 of Regs. 105 is printed in the margin.[4] It is under

---

[4] Sec. 81.11. Optional valuation date.—In general, the object of subsection (j) of section 811 is to make provision whereby the amount of tax otherwise payable may be lessened when, within the year following the decedent's death, the gross estate has suffered a shrinkage in its aggregate value.

The executor may, by an election upon his return, Form 706, if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law, have the property which was included in the gross estate on the date of the decedent's death valued as of the applicable dates, as follows:

\* \* \* \* \* \*

(b) Any property not distributed, sold, exchanged, or otherwise disposed of within such 1-year period, valued as of the date one year after the date of decedent's death;

\* \* \* \* \* \*

In valuing the gross estate under the optional valuation method, all of the property interests existing at the date of death which are a part of the gross estate as determined under the subsections of section 811 constitute the property to be valued as of one year after the date of the decedent's death, or as of the date of the decedent's death, or as of some intermediate date. Such property is hereinafter referred to as "included property." "Included property" as of the date of the decedent's death remains "included property" for the purpose of valuing the gross estate under the optional valuation method even though it is changed in form during the optional valuation period by being actually received, or disposed of, in whole or in part, by the estate. However, property earned or accrued (whether received or not) after the decedent's death and during the optional valuation period with respect to any property interest existing at the date of death, which does not represent a form of "included property" itself or the receipt thereof, is to be excluded in valuing the gross estate at the subsequent valuation date and is hereinafter referred to as "excluded property." Among the items of "included property" to be valued in accordance with these principles are the following:

\* \* \* \* \* \*

(4) *Stock of a corporation.*—Shares of stock in a corporation and dividends declared to stockholders of record on or before the date of the decedent's death and not collected at

these regulations that the Commissioner has determined that the 831 shares which petitioner received December 15, 1953, as a stock dividend on the 10,394 shares which decedent owned at the time of his death were "included property" within the meaning of the foregoing regulation. In discussing the foregoing regulation respondent says in his brief:

It is the contention of the respondent that unless the stock dividend in the instant case is included in the decedent's gross estate as of the optional valuation date, the shares of stock will not reasonably represent the "included property" at the death of the decedent. * * *

In Rev. Rul. 58–576, I.R.B. 1958–47, 14–16, a ruling is made with respect to: "Valuation to be used where the executors of an estate elect the alternate valuation method under section 2032 of the Internal Revenue Code of 1954 in certain factual situations involving stock rights, stock dividends, insurance proceeds, and interest bearing obligations received or disposed of within the year following the decedent's death." It should be pointed out here that section 2032, I.R.C. 1954, referred to above is substantially the same as section 811(j). In the ruling which we are now discussing it is stated, among other things, as follows:

Property which is "included property" as of the date of the decedent's death remains "included property" for the purpose of valuing the gross estate under the optional valuation method even though it is changed in form during the optional valuation period by being actually received, or disposed of, in whole or in part, by the estate. However, property earned or accrued (whether received or not) after the decedent's death and during the alternate valuation period with respect to any property interest existing at the date of death, which does not represent a form of "included property" itself or the receipt thereof, is to be excluded in valuing the gross estate at the subsequent valuation date and is referred to as "excluded property."

The factual situations with respect to which advice is requested are as follows:

\*          \*          \*          \*          \*          \*

*Situation No. 3.*

Additional stock received as a result of a stock dividend before the year expires, but after the death of the decedent.

the date of death constitute "included property" of the estate. Ordinary dividends out of earnings and profits, whether in cash or in shares of the corporation or in other property, declared to stockholders of record after the date of the decedent's death are "excluded property" and are not to be valued under the optional valuation method. If, however, dividends are declared to stockholders of record after the date of the decedent's death with the effect that the shares of stock at the subsequent valuation date do not reasonably represent the same "included property" of the gross estate as existed at the date of the decedent's death, such dividends are "included property" except to the extent that such dividends are out of earnings of the corporation after the date of the decedent's death. For example if a corporation makes a distribution in complete or partial liquidation to stockholders of record during the optional valuation period, the amount of such distribution received on stock included in the gross estate is itself "included property," except to the extent that the distribution was out of earnings and profits since the date of the decedent's death. * * *

*Answer.*

A stock dividend which is not income within the meaning of the Sixteenth Amendment to the Constitution received subsequent to the decedent's death must be included in the gross estate where the alternate valuation method has been elected. The declaration of the stock dividend after the decedent's death directly affects the value of the shares of stock at the subsequent valuation date so that the decedent's shares of stock in the corporation at the subsequent valuation date no longer reasonably represent the same property interest in the corporation possessed by the decedent at the time of his death. Such a dividend is "included property" as that term is defined in section 20.2032–1 of the regulations.

While it is, of course, true that a revenue ruling such as the one from which we have just quoted is not binding upon us in the interpretation of the statute to which it pertains, nevertheless in the instant case, after a careful examination of the statutes and the Treasury regulations involved, we think the foregoing ruling as to how a stock dividend shall be treated under the alternate valuation method is correct.

We, therefore, sustain the Commissioner in his determination. The decision hereunder should be entered under Rule 50 since administrative adjustments of the deficiency will be necessary as pointed out in the stipulation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*